[Civ. No. 22351. Second Dist., Div. Three. Jan. 10, 1958.]

Estate of ALICE COWHICK, Deceased. FLORENCE BRICKMAN, Appellant, v. W. E. BRIDWELL et al., Respondents.

636

A. J. O'Connor, Vance Booker and George J. Hider for Appellant.

Betts, Ely & Loomis and Theodore P. Shield for Respondents.

WOOD (Parker), J.—Florence Brickman, the executrix and principal beneficiary under a purported will of Alice Cowhick, deceased, filed a petition for probate of the purported will. Norma H. Backman and George C. Wyman, niece and nephew of decedent, contested the admission of the purported will to probate on the grounds, among others, of unsoundness of mind; and undue influence on the part of Florence Brickman. The jury returned special verdicts to the effect decedent was not of sound mind at the time she executed the purported will; and she was acting under the undue influence of Florence Brickman at said time. The court rendered judgment, based on the verdicts, denying probate of the purported will. Petitioner (Mrs. Brickman) appeals from the special verdicts and from the judgment entered thereon.

Appellant contends that the evidence was insufficient to support the verdicts and judgment.

Mrs. Cowhick, 74 years of age, died December 12, 1955, leaving an estate of the approximate value of $100,000. Her heirs at law were seven nieces and nephews. The purported will, which was in typewriting and dated April 18, 1955, gave $1.00 to her niece Norma Backman; $1.00 to her nephew George Wyman; $1.00 to each other relative who made claim to her estate; and gave the remainder of her property to Florence Brickman, who was named executrix without bond.

Mrs. Brickman and Mr. and Mrs. Cowhick became acquainted in 1952. From April, 1953, until March, 1954, Mrs. Brickman operated a restaurant next door to the Cowhick home in North Hollywood. Mr. Cowhick died in December, 1953. Mr. and Mrs. Cowhick were patrons of the restaurant. After selling the restaurant in March, 1954, Mrs. Brickman

rendered services as a practical nurse at various places until December, 1954. Thereafter she operated a boarding home for aged persons. The boarding home was a few blocks from Mrs. Cowhick's residence. Sometime between April 1 and April 5, 1955, Mrs. Cowhick sustained a cerebral vascular stroke.

Mrs. Bridwell testified that she had been a friend of Mrs. Cowhick since 1950; on April 5, 1955, she (witness) called Mrs. Cowhick by telephone, and Mrs. Cowhick said that she was ill and she wanted Mrs. Bridwell to tell Mrs. Brickman to come and get Mrs. Cowhick and take her to Mrs. Brickman's home; Mrs. Bridwell gave the message to Mrs. Brickman.

On April 5 after receiving the message, Mrs. Brickman and Mr. Gleason (a carpenter who was then working for Mrs. Brickman) went to Mrs. Cowhick's home and found her lying on the bed. Mr. Gleason carried Mrs. Cowhick and placed her in an automobile, and Mrs. Brickman drove the automobile to her home. Mr. Gleason carried Mrs. Cowhick into the home. Mrs. Brickman called Dr. Dickerman, who had treated Mrs. Cowhick on March 28 and April 1. At the request of Mrs. Brickman, the doctor went to the home on April 5 and examined Mrs. Cowhick. He testified that she had some difficulty in talking, and her left arm and left leg were partially paralyzed; when he saw her again on April 8 her blood pressure was high and she seemed to be failing fast.

Mrs. Eggen testified that she went to Mrs. Brickman's home on April 4 as an employee of Mrs. Brickman to help with the housework; on April 7 Mrs. Cowhick started talking about a will, and on April 10 Mrs. Cowhick told her that she wanted a lawyer to help her draw a will; she (witness) replied that she did not know anything about it; Mrs. Cowhick said she wanted all her expenses paid, wanted Norma Backman and George Wyman to have $1.00 each, and wanted Mrs. Brickman to have the remainder of her property; she (witness) wrote on paper what Mrs. Cowhick said she wanted in the will; she (witness) gave the paper to Mrs. Brickman.

Mrs. Brickman testified that on April 11 Mrs. Cowhick said she wanted a will drawn and wanted Mrs. Brickman to get an attorney; she (witness) asked if she wanted Mr. Empey; Mrs. Cowhick replied that she did not want him; on that day, and about every day, Mrs. Cowhick was depressed and she cried; on April 11, about 7 p. m., Mrs. Brickman telephoned Mr. Booker, an attorney, and he came to the house the next morning about 11 o'clock; that morning, before the attorney arrived, Mrs. Cowhick told Mrs. Brickman what she wanted

in the will; she said she wanted all bills and funeral expenses paid, wanted Norma Backman and George Wyman to have $1.00 each, and wanted Mrs. Brickman to have the rest of her property and wanted her to be executrix; Mrs. Cowhick said she wanted Mrs. Brickman to tell the attorney what Mrs. Cowhick wanted in the will; Mrs. Eggen, the housekeeper, had given Mrs. Brickman the paper that Mrs. Cowhick "had dictated to Mrs. Eggen the week prior to that"; she (witness) asked Mrs. Cowhick if she wanted to see the attorney who was there; she replied that she did not want to see him and that "You know what I want"; Mrs. Brickman talked to the attorney in the hall just outside the room of Mrs. Cowhick and told the attorney what Mrs. Cowhick had said she wanted in the will; Mrs. Cowhick did not talk to the attorney, Mr. Booker, at any time; the attorney brought the will the next day and gave it to Mrs. Brickman, who did not open the will or look at it to see if it contained the things that Mrs. Cowhick said she wanted in it; Mrs. Cowhick was sleeping at that time; the attorney told Mrs. Brickman that the will had to be signed by two witnesses; she (witness) gave the will to Mrs. Cowhick, who put it under her pillow.

Mrs. Brickman testified further that on April 13 she made out a check, at the request of Mrs. Cowhick, in payment of taxes, and Mrs. Cowhick signed the check; she also made out a check at her request to pay for insurance, and Mrs. Cowhick signed the check; on April 17 Mrs. Cowhick talked with Mrs. Brickman about giving Mrs. Brickman access to her safe deposit box in the Bank of America; on April 19 Mrs. Cowhick signed an authorization for her to have access to Mrs. Cowhick's safe deposit box where there was $3,400 in cash; the bank would not accept the authorization, and Mrs. Cowhick signed another paper about 9 p. m. of that day; on April 21 she (witness) had Mrs. Cowhick sign a bank draft for the transfer of $3,747.74 from a savings account at the Security-First National Bank to Mrs. Cowhick's checking account at the Bank of America; thereafter she (witness) made out several other checks at the request of Mrs. Cowhick, and Mrs. Cowhick signed the checks.

Mr. Booker, an attorney, testified that he went to the home of Mrs. Brickman on the morning of April 12; he went there pursuant to a telephone call from her the night before, wherein she said that someone at her home wanted to make a will; when he arrived there he asked her where the lady was who wanted the will drawn; she replied she was in "this room

here''(which was a few feet from where they were in the hall); Mrs. Brickman opened the door to the room and said that the attorney is here to draw ''your will,'' and ''Do you want to see him?''; the answer was, ''No, you know what I want''; then Mrs. Brickman came out of the room and gave him the information; she was reading from a piece of paper; she said that Mrs. Cowhick wanted her bills paid, wanted to leave $1.00 to each of her relatives, and wanted Mrs. Brickman to have the remainder of her property and to be executrix without bond; he did not see Mrs. Cowhick at that time or at all; he took the piece of paper (from which Mrs. Brickman read) with him; he drew the will and returned the next day and gave it to Mrs. Brickman; he told her the requirements for the execution of a will; Mrs. Brickman paid him $10 for his services in preparing the will; he destroyed the piece of paper after he had drawn the will.

Mrs. Marshall testified that she had been a friend of Mrs. Brickman for 23 years; she went to Mrs. Brickman's home on April 18 and Mrs. Brickman was not in the house; after she had been there a short time Mrs. Cowhick asked her and Mrs. Eggen to come into her room; when they were in her room she held the will and said, ''I want to get this fixed up''; she (witness) read the will to Mrs. Cowhick, who was in bed; Mrs. Cowhick signed the will; she and Mrs. Eggen signed the will as witnesses; after they had signed the will Mrs. Cowhick put it under her pillow, and told them not to tell anyone about it.

Mrs. Eggen testified in substance the same as Mrs. Marshall testified regarding the execution of the will. She also testified that Mrs. Brickman had been away from the home about 20 minutes when Mrs. Cowhick asked them to come into her room; they were in the room about 20 minutes; Mrs. Brickman returned to the house about 10 minutes after they left the room; she (witness) saw the will under the pillow for approximately a week after they had signed it.

Mrs. Brickman testified that when she returned to the house on April 18, about 5 p. m., Mrs. Marshall told her the will had been signed; about four days later Mrs. Cowhick gave her the will and she put it in a box, but she did not look at it at that time; she read the will two days later.

Mrs. Brickman did not tell anyone that there was a will until approximately two weeks after the death of Mrs. Cowhick. (Mrs. Cowhick died December 13, 1955, and the petition for probate was filed December 29, 1955.)

On May 27, 1955, the Bank of America was appointed guardian of Mrs. Cowhick's estate, and Mr. Bridwell was appointed guardian of her person.

On May 31 Mrs. Cowhick was taken to a hospital. On June 4 she was returned to the Brickman home. She was confined to her bed thereafter. She weighed about 85 pounds, was blind in one eye, and after the stroke on April 5 she was paralyzed on her left side and her speech was affected.

Mr. Empey, called as a witness by contestants, testified: he is an attorney; in 1954 he probated the estate of Mrs. Cowhick's deceased husband; during that year he saw Mrs. Cowhick once or twice a month; on several of those occasions he suggested that she make a will and advised her that if she did not make a will her property would go to her nieces and nephews equally; the last time he saw her, before she became ill, was in December, 1954, or January, 1955; on April 26, 1955, at the request of Mrs. Backman, he went to Mrs. Brickman's residence and saw Mrs. Cowhick; he remained with her about two minutes; she did not move or speak while he was there; he asked her if she knew him and she made a "gibberish" sound; in his opinion, she was physically and mentally incompetent at that time.

Mrs. Wagner, called as a witness by contestants, testified: she had known Mrs. Cowhick 25 years and was her closest friend; after Mrs. Cowhick moved to North Hollywood she visited Mrs. Cowhick occasionally and talked with her by telephone four or five times a day; on April 10, 1955, she visited Mrs. Cowhick at Mrs. Brickman's residence; she spoke to Mrs. Cowhick but she did not answer; she did not open her eyes and did not move; on that occasion she did not have a conversation with Mrs. Cowhick; on April 17, when she visited Mrs. Cowhick, Mrs. Cowhick opened her eyes and mumbled but she could be understood; on April 28, when she visited Mrs. Cowhick; Mrs. Cowhick opened her eyes, mumbled and spelled out the name of Mr. Bridwell and Norma Backman.

Edward C. Olson, an attorney, called as a witness by contestants, testified: on May 3, 1955, he called on Mrs. Cowhick at Mrs. Brickman's residence to serve a citation (*re* appointment of guardian) on her; he saw her for about 20 minutes; he tried to talk to her but she did not respond; she mumbled, but she did not seem to comprehend what he was talking about.

Dr. Dickerman testified that he considered that Mrs. Cow-

hick was competent; she told him that she did not like her niece Norma Backman because Norma charged her $10 for every visit Norma made and when Mrs. Cowhick cut the charge to $5.00 Norma quit coming to visit her.

Mr. and Mrs. Bridwell, who had known Mrs. Cowhick since 1950, testified that Mrs. Cowhick was competent.

Mrs. Brickman testified that Mrs. Cowhick said that she did not like Norma Backman or George Wyman because Norma mistreated her mother (Mrs. Cowhick's sister), and they did not care whether she (Mrs. Cowhick) lived or died.

Norma Backman testified that Mrs. Cowhick told her by telephone that she did not like Mrs. Brickman because she was always criticizing her and she was domineering. She also testified that she visited Mrs. Cowhick as often as she could and there was no animosity between them; when Mr. Cowhick died in 1953, Mrs. Cowhick asked her to make the funeral arrangements and help with the details regarding his estate; she went to Mrs. Cowhick's home and lived with her several months; she had a key to the house, and at the request of Mrs. Cowhick, she made an inventory of her bonds.

■ Rules with reference to circumstances under which a presumption of undue influence arises, in the execution of a will, are stated in *Estate of White,* 128 Cal.App.2d 659 [276 P.2d 11]. It was said therein at page 668: "A presumption of undue influence arises from proof of a confidential relation between a beneficiary and a testator plus proof of activity on the part of the beneficiary in the preparation of the will. Some of the cases say, instead of proof of activity on the part of a beneficiary in the preparation of the will, proof of activity on the part of a beneficiary in procuring the execution of the will. Other cases say that in addition to proof of a confidential relation plus activity in the preparation of the will there must be proof that the beneficiary unduly profited by the will in order that the presumption arise." ■ It was stated further therein at page 669: "The presumption is rebuttable. When proof is made sufficient to give rise to the presumption, the burden is on the beneficiary to show that the will was not procured by his undue influence. ■ Whether the presumption was overcome is a question for the trier of fact." In the present case it was established that a confidential relation existed between the testatrix and the principal beneficiary, Mrs. Brickman. There was evidence that prior to, and at the time of, executing the will Mrs. Brickman assisted the testatrix in writing checks and attending to her

financial affairs. At the trial it was conceded that a confidential relationship existed. The trial judge asked counsel for proponent if it was conceded that the relationship existed. Counsel replied that in one of the instructions of proponent the fiduciary relationship was conceded. A part of one of the instructions requested by proponent, and given by the court, was: ''Before you can properly apply the so-called presumption of undue influence, you must find from the evidence each of the following: 1. A confidential relationship existed between Alice Cowhick and Florence Brickman, her friend. This is freely admitted by Florence Brickman. . . .'' Since a confidential relationship existed between the testatrix and the beneficiary Mrs. Brickman, the burden was upon Mrs. Brickman to prove that the will was not procured by her undue influence.

The evidence was sufficient to prove that the beneficiary Mrs. Brickman was active in the preparation of the will. She selected the attorney who drew the will, called him by telephone and made the appointment for him to come to her home for the purpose of preparing the will. When the attorney was at her house, pursuant to the appointment, he did not go into the room where the testatrix was lying in bed. He did not know the testatrix and did not talk to her. At that time Mrs. Brickman told him what provisions should be in the will. The attorney prepared the will and delivered it to Mrs. Brickman at her home the following day. He did not see or talk to the testatrix at that time. Mrs. Brickman paid him $10 for his services. She placed the will under the pillow of the testatrix.

The beneficiary Mrs. Brickman unduly profited by the will. She was not a relative of the testatrix and had been acquainted with her about two and a half years. The approximate value of the estate was $100,000. According to the provisions of the will Mrs. Brickman would receive practically all the estate. It appears that in the absence of a will the estate of Mrs. Cowhick would be distributed to her nieces and nephews. There was evidence that Mr. Empey, the attorney who represented Mrs. Cowhick in the administration of her husband's estate, advised her that if she did not make a will her property would go to her nieces and nephews.

As above stated, at the time of signing the will the testatrix was ill, confined to a bed in Mrs. Brickman's home, and was paralyzed on one side of her body.

The evidence was sufficient to support the verdict that the

testatrix was acting under the undue influence of Mrs. Brickman at the time the will was executed.

In view of the above conclusion, it is not necessary to discuss the sufficiency of the evidence to support the verdict as to unsoundness of mind.

The purported appeal from the verdicts is dismissed. The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 6, 1958.